UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK EDWARD SMITH,

                Petitioner,         Case Number 12-11527
                                                    HON. AVERN COHN

v.

MARY BERGHUIS,

                Respondent.
_____/

## MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Jack Edward Smith (Petitioner) is a state inmate at the Earnest C. Brooks Correctional Facility in Muskegon, Michigan. Petitioner filed a pro se petition for a writ of habeas corpus challenging his convictions for arson of real property, MICH. COMP. LAWS § 750.73, and possession of a Moltov cocktail. MICH. COMP. LAWS § 750.211a(1)(a)(b). Respondent, through the Jackson County Prosecutor's Office, filed a response, arguing that Petitioner's claims are without merit. For the reasons which follow, the petition will be denied.

### II. Background

#### A. Facts

The following facts were revealed at Petitioner's trial:

The charges against Petitioner arose when Petitioner used containers of gasoline to start a fire at the Odyssey Show Bar, an entertainment establishment near Jackson, Michigan.

At trial, Johnny Seales testified that he was a manager at the Sudsy Coin Wash, a laundry mat located near the Odyssey Show Bar. On May 21, 2007, Petitioner came in and asked for a towel. Seales gave him a towel. Seales and other patrons then smelled gasoline and saw Petitioner leave the laundry mat. Two patrons chased after Petitioner. Donnita Hickox testified that she, Heidi McNally, and Matt Thayer were at the Sudsy Coin. Petitioner came in and was running around frantically looking for something. He was carrying a half-gallon jug with a yellow substance in it. He took McNally's son's plastic water bottle, poured some of the substance into it, and stuffed a rag in it. Petitioner left, and Hickox and Thayer followed him toward the Odyssey. Hickox went into the Odyssey behind Petitioner and she saw that areas of the carpet and walls were burning. Hickox helped put the fire out. After the fire was out, she went outside and saw Petitioner chase Thayer and punch him in the head. Petitioner then sat down and waited in the parking lot for police to arrive.

Jennifer Delazzer testified that Petitioner was her ex-boyfriend. After the relationship ended, Petitioner continued to contact her by phone and harass her. On the date of the fire, Delazzer was working at the Odyssey. Petitioner called her at 7:00 or 8:00 p.m. and threatened to kill her. Petitioner came into the store a little after 9:00 p.m. She heard a liquid hitting the floor and saw Petitioner coming down the stairs. She saw that an area near the wall was on fire. Petitioner appeared to be pouring gasoline out of a milk jug. Petitioner also had a water bottle in his other hand.

Using photographs, Delazzer pointed to the areas of the wall and carpet that caught fire. Delazzer followed Petitioner out of the Odyssey after he exited. He threatened to kill her and started to move toward her, but a man interfered and

Petitioner hit him. Police soon arrived and arrested Petitioner.

Stewart Szczepanski testified that he was talking to Delazzer in the Odyssey when he heard a liquid hitting the floor and smelled gasoline.  He looked over and saw Petitioner holding a jug and pouring liquid on the floor.  He saw Petitioner ignite a lighter and throw it down, and then he saw flames erupt.  Szczepanski grabbed a fire extinguisher and put out the fire.

Sergeant Elmer Hitt testified that he went to the Odyssey on an fire call.  Behind the building, he saw Petitioner and Thayer fighting.  Hitt arrested Petitioner, who yelled at a woman that he was going to kill her.

Officer Joseph Merritt testified that he took custody of Petitioner from another officer.  He found a blue Bic lighter in Petitioner's pants pocket. Petitioner kept repeating, "'I'm gonna kill the fucking bitch," directed at a woman who was outside.  A breath test of Petitioner at the hospital showed a blood alcohol content of .248.

Officer Patrick Boulter testified that the fire was out when he arrived.  He took photographs showing a milk container, a plastic water bottle, and charring on a rug and wall.  The water bottle had charring around its lip. Delazzer gave him a videotape that showed Petitioner, Delazzer, Szczepanski, fire, and smoke.  He observed charring on a rug in the entertainment area and the area where Delazzer and Szczepanski had been.

Petitioner testified in his own defense.  He testified that after he and Delazzer ended their relationship, he tried to kill himself with an overdose.  At the time of the incident, he was facing jail time for drinking and driving. He went to a gas station and put gas in a milk jug.  He testified that he went to the Odyssey and dumped the gas out and was going to set it on fire.  He claimed, however, that he never lit the gas on fire.

He denied that he ever said he was going to kill Delazzer until he was in the police car and he saw her outside. Nothing was burning when he left the building. He claimed that he was angry that he was going to jail for one year, and he wanted to go to prison instead.

In light of this evidence, the jury convicted Petitioner of arson of real property and possession of a Moltov cocktail. Petitioner was acquitted him of the assault with intent to commit murder charge as to Jennifer Delazzer and Stewart Szczepanski. Petitioner was sentenced to 20-to-60 years for his convictions.

### B. Procedural History

Following his conviction, Petitioner filed a direct appeal, raising two claims: (1) the trial court erred in failing to instruct the jury on attempted arson, and (2) there was insufficient evidence presented at trial to sustain Petitioner's conviction for possessing a Moltov cocktail. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. People v. Smith, No. 282505 (Mich. Ct. App January 8, 2009). Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims, but it was denied by standard order. People v. Smith, No. 138354 (Mich. Sup. Ct. June 23, 2009).

Petitioner then filed a motion for relief from judgment in the trial court, asserting that he was denied the effective assistance of trial and appellate counsel. The trial court denied the motion in an opinion dated December 30, 2009, finding that Petitioner had failed to demonstrate good cause or actual prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise these claims during his direct appeal. Petitioner appealed this decision to the state appellate courts, but they both denied relief under Rule

6.508(D). People v. Smith, No. 297737 (Mich. Ct. App. August 2, 2010); People v. Smith, No. 141643 (Mich. Sup. Ct. February 7, 2011).

Petitioner then filed a second motion for relief from judgment in the trial court. Petitioner alleged that a surveillance tape from the Odyssey taken during the incident does not show him in the store and does not show any fire damage. He claimed that this tape showed that he is actually innocent of the crimes. The trial court denied the motion in an opinion dated December 6, 2011. Petitioner appealed this decision to the state appellate courts, but both found that Petitioner was barred under Michigan Court Rule 6.502(G) from filing a second post-conviction review proceeding. People v. Smith, No. 307815 (Mich. Ct. App. March 2, 2012); People v. Smith, No. 144992 (Mich. Sup. Ct. September 24, 2012).

Petitioner then filed the instant application for habeas corpus relief. From what can be gleaned, Petitioner appears to allege that the fact that a surveillance video tape taken at the time of the incident does not show him present proves that he is actually innocent. Petitioner has also attached copies of photographs taken after the incident at the Odyssey which he claims shows that there was never a fire.

### III. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The

Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

IV. Analysis

Petitioner says that he is actually innocent and is therefore entitled to habeas relief. He asserts that a surveillance videotape from the Odyssey taken at the time of the incident does not show him to be present, and he claims that photographs he attached to his petition show that there was never a fire at the establishment.

Actual innocence claims are relevant in federal habeas proceedings not as an independent claim for relief, however, but only as a justification to overcome procedural obstacles to consideration of other federal constitutional violations that rendered a trial unfair. Sitto v. Bock, 207 F. Supp. 2d 668, 673-674 ( E.D. Mich. 2002) (citing Schlup v. Delo, 513 U.S. 298 (1995)). According to well-established Sixth Circuit precedent, Petitioner faces an insurmountable obstacle in attempting to advance his claim of actual innocence as a substantive claim seeking habeas relief. See Cress v. Palmer, 484 F.3d 844, 853-55 (6th Cir. 2007). The Supreme Court has stated that "[claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. . . . [Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." Harare v. Collins, 506 U.S. 390, 400 (1993).

Even assuming this claim is cognizable, Petitioner has not shown that he is actually innocent. First, Petitioner testified at trial and admitted that he went into the Odyssey with the containers of gasoline and sprayed them on the floor. His defense was that he never ignited the gasoline. Likewise the two employees of the Odyssey testified that Petitioner was in the establishment, and the patrons of the laundry mat

followed Petitioner to the store. Finally, Petitioner was arrested sitting outside the Odyssey. Petitioner's claim that he cannot be seen on a particular videotape hardly proves that he was not, in fact, there in light of the evidence presented at trial.

Moreover, at the request of both parties, the Court has reviewed the video recording. It is of very poor quality. It depicts a three-way split-screen shot showing the parking lot and two interior locations of the Odyssey. At 3:07 into the video one can discern a sudden brief flash followed by smoke emanating from the spot where an individual is standing. At 3:40 the recording shows what appear to be two other individuals walking towards the location of the flash, and perhaps extinguishing a fire. Due to the very poor quality, it is impossible to determine how many people are present, let alone their identity. Simply stated, the recording does not show in anyway that Petitioner did not commit the offense. Rather, it tends to support that there was a fire, and that it was occurred while people were present in the store.

Petitioner also claims that photographs of the scene show that there was not a fire at all. The Court has reviewed the photographs. Certainly, there was not a great deal of damage. Rather, the photographs show what appear to be scorch marks or smoke damage to a part of a wall and some dark discoloration on the carpeting. Photographs of the two plastic bottles show them to be largely intact, with perhaps some minor deformation or melting at the openings of the bottles. These photographs do not show that there was not a fire.

The standard for demonstrating actual innocence in a habeas action is exacting. It requires a Petitioner to show that in light of his new evidence "it is more likely than not that no reasonable juror would have convicted [Petitioner]." Schlup v. Delo, 513 U.S.

298 (1995). Petitioner's new evidence does not come close to meeting this standard. Given the eyewitness accounts and Petitioner's own trial testimony, the tape and photographs do not make it more likely than not that no reasonable juror would have convicted him. Accordingly, Petitioner's claim is without merit, and he is not entitled to any relief.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). Reasonable jurists could not conclude that dismissal of Petitioner's claims was debatable or wrong. Therefore, Petitioner is not entitled to a certificate of appealability.

## VI. Conclusion

Accordingly, for the reasons stated above, the petition is DENIED. A certificate of appealability is also DENIED.

SO ORDERED.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: September 27, 2013

          12-11527 Jack Edward Smith v. Mary Berghuis

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 27, 2013, by electronic and/or ordinary mail.

          <u>S/Sakne Chami</u>
          Case Manager, (313) 234-5160